The City of Crawfordsville *v.* Hays.

*S. Claypool, F. P. A. Phelps, S. R. Harryman, W. R. Harrison*, and *W. S. Shirley*, for appellee.

*Petition for a rehearing overruled.

———————

## THE CITY OF CRAWFORDSVILLE *v.* HAYS.

SCHOOLS.—*Statute Construed.*—The latter part of sec. 28 of the school law of 1865 (3 Ind. Stat. 449) has no application to incorporated towns and cities.

SAME.—Section 164 of the same act, as far as it provides for appeals to the examiners from the action of the trustees, in dismissing teachers, does not apply to incorporated towns and cities.

SAME.—*Power of School Trustees in Incorporated Towns or Cities.*—*Dismissal of Teachers.*—There is no statute requiring or authorizing school trustees in incorporated towns or cities to dismiss teachers.

SAME.—If a school-teacher employed to teach in the public school of an incorporated town or city, for a definite length of time, proves to be incompetent, and unable to teach the branches of study which he or she has been engaged to teach, either from a lack of learning or incapacity to impart learning to others, or if, in any other respect, there is a failure to discharge the obligations assumed by the contract, or implied from the nature of the employment, the school trustees of the town or city may dismiss the teacher from such employment.

SAME.—If a teacher is employed for a definite length of time and has, in all respects, fulfilled the contract, such teacher cannot be discharged, without his or her consent.

PLEADING.—*Dismissal of School-Teacher.*—*Answer.*—In an action brought by a person employed to teach in the public school of an incorporated city, to recover for services rendered, the complaint alleging an employment for a definite length of time, an answer alleging that the teacher was dismissed by the school trustees, on charges made against such teacher, the trustees after notice to the teacher having adjudged the charges sustained, was bad.

APPEARANCE TO ACTION.—The filing of a demurrer to a complaint is a full appearance to the action.

SAME.—*Effect of Appearance.*—A full appearance to an action waives all defects in the process and the service thereof.

APPEAL from the Montgomery Circuit Court.

WORDEN, J.—This was an action by the appellee against the appellant, commenced before a justice of the peace.

Before the justice there was judgment for the plaintiff, from which the defendant appealed to the circuit court, where there was a like judgment.

The complaint contained two paragraphs. The first alleged, in substance, that the plaintiff was employed by the board of school trustees of the city of Crawfordsville to teach in the public school of that city for the period of nine months, commencing September 13th, 1869, and ending June 10th, 1870, at the rate of forty-five dollars per month; that she remained in said employment for the said term of nine months, and has received for said services but the sum of $337.50, leaving due and unpaid to her the sum of $67.50; wherefore, etc.

The second paragraph alleged, substantially, that on the —— day of September, 1869, the plaintiff was employed by the board of trustees of said city, to teach in the public school thereof, for the term of nine months, at the rate of forty-five dollars per month; that on September 13th, 1869, she entered upon the employment, and continued in the discharge of her duty until the occurrence of the matter hereinafter stated. On April 29th, 1870, she received a written notice from the clerk of the board of trustees, that her services as such teacher were dispensed with, and that her functions as such would then cease. To this notice she paid no attention, but on the following morning she repaired as usual to her school-room and had proceeded so far as calling the roll of her class, when one A. Fullen, who styled himself "Superintendent," ordered her class to leave the room and repair to another part of the building, to be under the care and supervision of another teacher; that on the same day another person, by the order of said Fullen, took possession of the room in which she had always taught, and to which she had been allotted, thus excluding her, against her will, and under her protest, from the school building as a teacher therein; that from that time on, she held herself in readiness to obey any commands of the said board of school trustees, which would restore her to her functions as teacher

in said public school; that afterward, on May 7th, 1870, she received the following notice, viz.:

"CRAWFORDSVILLE, May 7th, 1870.

"*Miss Abbie Hays*, You are hereby notified to appear before the school trustees of the city of Crawfordsville on the 12th inst., at 4½ o'clock, P. M., in the middle school-room of the frame school building, to answer the following charges against you, to wit:

1. Incompetency as a teacher.
2. Unaptness as an instructor.
3. General conduct unbecoming a teacher, and detrimental to the interest of the public school.
4. An obstinate and determined refusal to comply with and enforce the rules (and counselling resistance to the same) laid down by the trustees for the government of the public schools.

"You are hereby further notified to have present at said time and place such counsel and witnesses as you may deem necessary to you for your defence.

"By order of school trustees,

"R. K. KROUT, Clerk."

She avers that the charges mentioned in the notice were not preferred by a majority of the legally qualified voters at the school meetings of said city, but were simply charges preferred, as she is informed, by the members of said board of school trustees themselves, and were only the emanations of malice on the part of said Fullen; that her services as such teacher were acceptable to the entire body of said voters of said school meetings; that on account of the last mentioned fact, she paid no attention to the notice last mentioned, but wrote to the board of trustees the following letter:

"CRAWFORDSVILLE, Ind., May 10th, 1870.

"*To the School Trustees of the city of Crawfordsville, Ind.*: GENTLEMEN, I hereby notify you that I am still in readiness to continue my functions as a teacher in the public school of this city, and will hold myself in readiness to do so during

the remainder of the term for which you employed me to teach. Any notice or request from you to continue my teaching will reach me, if addressed to me at Crawfordsville, Indiana.          Very respectfully yours,

"ABBIE HAYS."

That subsequently, on May 13th, 1870, she received the following notice:

"CRAWFORDSVILLE, May 13th, 1870.

"*Miss Abbie Hays,*  I have been directed by the school trustees of this city to inform you that said trustees met pursuant to written notice given you, and in default of your appearance, either in person or by attorney, proceeded to hear evidence in the matter of charges preferred against you. After hearing evidence touching said matters of charges, and having carefully considered the same, said trustees adjudged such charges sustained, and thereupon ordered you discharged from further services as teacher in the public schools of this city.

"By order of the board of school trustees.

"R. K. KROUT, Clerk."

That notwithstanding all the foregoing notices, the plaintiff continued to hold herself in readiness to teach as directed by the board of school trustees, so far as they were in consonance with the terms of said contract, and was ever in such readiness until the expiration of the term for which she was employed; that she has received for her services the sum of $337.50, leaving due and unpaid the sum of $67.50; wherefore, etc.

On the filing of the complaint, a summons was issued by the justice, returnable July 1st, 1870, which was returned served on June 28th, 1870, by reading to the Mayor and Marshall of the city, and to Robert K. Krout, Clerk of the board of school trustees. On the return day of the summons, the defendant made "a special appearance," and moved "to quash the summons and dismiss the suit, on account of the illegality of the summons as to the time and manner of service;" which motion the justice overruled. The

justice's transcript recites that the defendant then filed sepa-
rate demurrers to each paragraph of the complaint, which
were overruled, and the defendant excepted.

Thereupon the defendant filed an answer of three para-
graphs. The first paragraph sets out the record of the board
of trustees, showing the employment of the plaintiff and her
discharge by the board of school trustees. It re-states much
of the matter alleged in the second paragraph of the com-
plaint. It alleges that on April 26th, 1870, "on account of the
continued misconduct of the plaintiff, her incompetency and
insubordination, and conduct detrimental to the interest of
the public schools," the board of school trustees discharged
her, and ordered the clerk of the board to notify her that
her connection with the school would cease on April 30th,
1870, which notice was duly served on her. This, we sup-
pose, was the notice alleged in the complaint to have been
received by the plaintiff, April 29th, 1870; that since that
time the plaintiff has performed no services for the defend-
ant as teacher or otherwise.

That on May 7th, 1870, the plaintiff still pretending to be
under the employment of the defendant, John W. Fullen,
Superintendent of said public school, preferred charges in
writing against the plaintiff before the board of trustees,
and the plaintiff was duly notified of the time and place of
the hearing thereof. This is the notice set out in the com-
plaint, containing a copy of the charges; that at the time
and place specified for the hearing of the charges, the board
of trustees met, the plaintiff not appearing, swore and exam-
ined witnesses; and upon hearing the evidence, the board
adjudged the charges to be sustained, and discharged the
plaintiff as a teacher in the school, and notified her accord-
ingly. The board also ordered the clerk to tender to the
plaintiff the amount due her up to May 12th, 1870. The ten-
der, amounting to $20.25, was accordingly made, but refused,
and the money was brought into court for her. This para-
graph of the answer was long, including the record of the

The City of Crawfordsville v. Hays.

proceedings of the board, but we have stated the substance, except what already appeared by the complaint.

The second paragraph of the answer was pleaded in abatement of the action, and avers that the writ should abate, the matter involved in the suit having relation to the affairs of the defendant as a school corporation, because the summons was not served in the proper manner, nor upon the proper persons, nor yet a sufficient length of time, as required by the school law.

The third paragraph was the general denial.

The justice sustained a demurrer to the first and second paragraphs of the defendant's answer, and on trial rendered judgment for the plaintiff for the sum of $67.50.

On appeal of the cause to the circuit court, the defendant filed demurrers to each paragraph of the complaint, but they were overruled, and exception was taken.

The plaintiff then demurred to the first and second paragraphs of the answer, and the demurrer was sustained, and the defendant again excepted.

The court thereupon rendered judgment for the plaintiff, for the sum of $72.50, to which no objection was made or exception taken.

The errors assigned are sufficient to embrace all the grounds relied upon for a reversal.

We are of opinion that each paragraph of the complaint was good. No objection has been pointed out to the first, and none to the second, except a point which will be noticed in considering the first paragraph of the answer.

The first paragraph of the answer relies upon the record of the proceedings of the board of trustees. It does not allege, as a matter of fact, that the plaintiff was incompetent as a teacher, nor that she was guilty of any improper conduct, nor that she had failed or refused to comply with the rules established by the trustees. In short, it does not allege that she had in any way violated the contract on her part. It does not allege, as matter of fact, on which issue could have been taken, any reason for her dismissal as such

teacher.   The gist of the defence is, that she was dismissed by the trustees on the charges made against her, they having, after giving her due notice, heard the evidence in support of the charges, and having adjudged them sustained. The trustees became her triers, and the defendant relies upon the result of that trial as the justification of her removal.

This leads to the inquiry whether any authority is conferred upon the board of school trustees of an incorporated town or city, to hear and determine charges against teachers, and to discharge them.   The only statutory provision bearing upon this question, so far as we are advised, is to be found in the latter part of sec. 28 of the school law of 1865. 3 Ind. Stat. 449.   It provides, that "the said trustee shall not employ any teacher whom a majority of those entitled to vote at school meetings have decided, at any regular school meeting, they do not wish employed; and at any time after the commencement of any school, if a majority of such voters petition such trustee that they wish the teacher· thereof dismissed, such trustee shall ·dismiss such teacher, but only upon due notice, and upon good cause shown," etc.

It is contended by counsel for appellee, that the provision above quoted is applicable to incorporated towns and cities, and, therefore, that the school trustees therein cannot dismiss a teacher, except upon the petition of a majority of the voters.   On the other hand, the counsel for the appellant claims, as we understand his brief, that the provision has no application to incorporated towns and cities.   We are of opinion that the latter is the correct view of this question. The statute, in using the words "such voters," refers to persons entitled to vote at school meetings.   School meetings are not held in towns and cities.   It will be seen by an examination of the act of 1865, that when the enumeration of the children was taken under that act, the parents, guardians, etc., were to be enquired of as to the school to which they were desirous of being attached; and upon the selections having been made, the persons selecting any given

school were to be regarded as constituting the school dis-trict of the school selected.. But such inquiries were not to be made in cities and incorporated towns. The persons listed, as parents, etc., in any town or city, constituted but a single district. Sec. 14. It seems that while outside of towns and cities the inhabitants had the privilege of selecting the school to which they would become attached, and thus, the district of which they would form a part, no such privilege was conferred upon the inhabitants of incorporated towns and cities. In cities and in many towns, while they each constitute but one district, many school-houses are neces-sary. These are usually established in different parts of the cities and towns for the convenience of the inhabitants.

There is no provision in the law, that we are aware of, authorizing parents or guardians to determine to which one of the schools they will send their children in towns and cities. These matters are managed, we believe, by the trus-tees exclusively; in towns and cities, who, doubtless, to some extent, consult the wishes of the inhabitants, having in view the grade of school which it is proper that any given pupil should attend, the convenience of parents, and the surround-ing circumstances. "Voters," as defined by secs. 14, 15, and 16 of the act, are such persons as have become a part of a given school district. Then it is provided by sec. 25, that "the voters as defined by section 14, 15, and 16 of this act, shall meet annually on the first Saturday in October, and elect one of their number director of such school, who shall, before entering upon duty, take an oath faithfully to dis-charge the same." The duties of the director are defined principally by secs. 29, 30, and 31 of the act. Amongst other things, he may exclude any refractory pupil from school. By sec. 32, an appeal lies from his decision in excluding a pupil, to the township trustee. By sec. 26 it is provided, that " the voters at school meetings, as provided in sections 14, 15, and 16 of this act, may hold other school meetings at any time, upon a call of the director, or any five of such

voters." Such school meetings have power, among other things, to designate their teacher.

Keeping in view these various provisions, and others contained in the act not necessary to be particularly noticed, it is evident that it was not the intention of the legislature that the provision quoted from sec. 28 should have any application to incorporated towns and cities, in which there are no "voters" in the sense in which the word is used in the statute, and in which the machinery of school meetings and school directors is unprovided for and unknown. Outside of towns and cities, where school meetings are provided for, and where such meetings have power to designate their teacher, it is quite reasonable that the voters at such meetings should have a voice in the question of the dismissal of such teachers. It would be impracticable to carry out the provision in incorporated towns and cities, where there are many schools, and where the patrons of each would know little or nothing of the character or qualifications of the teachers in the others. The patrons of any given school, in an incorporated town or city, do not, as outside thereof, constitute a school district. The entire town or city constitutes the district, however many different schools may be established. If the provision in question were to be held applicable to towns and cities, a majority of all the voters in the town or city would be necessary to meet the requirements of the provision. This, in very many cases, would be utterly impracticable. Besides this, it would be an unjustifiable interference on the part of the patrons of one school to petition for the dismissal of a teacher in a school which they do not patronize. We are quite well satisfied that the provision in question has no application to cities and incorporated towns; and this view of the law is in harmony with that taken and acted upon by the department of public instruction.

But one portion of the provision is no more applicable to cities and towns than another. If the provision on the subject of the petition of the voters is not applicable to cities

and towns, neither is that authorizing the trustees to dismiss teachers, for they are both inseparably blended together.

It results that there is no statutory provision requiring or authorizing trustees in cities and incorporated towns to dismiss teachers at all.

By section 164 of the act, it is provided, that appeals from the decisions of the trustees shall lie to the school examiners, "and their decisions of all local questions relating to the legality of school meetings, establishment of schools, and the location, building, repair, or removal of schoolhouses, or transfers of persons for school purposes, and designation and dismissal of teachers, shall be final."

This section, so far as it provides for an appeal from the action of the trustees to the examiners, in dismissing teachers, cannot be construed to apply to incorporated towns and cities, because, as we have seen, in such towns and cities the trustees are not empowered by the statute to dismiss teachers at all. The right of appeal here provided for was intended to be commensurate, and only commensurate so far as it relates to the dismissal of teachers, with the power of dismissal vested by the act in the trustees.

The correctness of the action of the trustees, then, in the dismissal of the appellee, must be tested by the general principles of the law applicable to the case. It does not follow that, because the school trustees in incorporated towns and cities are not authorized by statute to dismiss teachers, they have no power or authority to do so, when there is any valid reason for such dismissal. The relation of teacher and pupil is one of the utmost importance to the well-being of that generation which is soon to take the place of the present in the active duties of life; and too much care and discrimination cannot well be taken in the selection of those who, as teachers in our common schools, are, in a great degree, to mould the moral and intellectual qualities of those whose rudimentary culture is placed under their charge. A teacher, doubtless, like a lawyer, surgeon, or

VOL. XLII.—14

The City of Crawfordsville v. Hays.

physician, when he undertakes an employment, impliedly agrees that he will bestow upon the service a reasonable degree of learning, skill, and care. When he accepts an employment as teacher in any given school, he agrees, by implication, that he has the learning necessary to enable him to teach the branches that are to be taught therein, as well as that he has the capacity, in a reasonable degree, of mparting that learning to others. He agrees, also, that he will exercise a reasonable degree of care and diligence in the advancement of his pupils in their studies, in preserving harmony, order, and discipline in the school; and that he will himself conform, as near as may be, to such reasonable rules and regulations as may be established by competent authority for the government of the school. He also agrees, as we think, by a necessary implication, that while he continues in such employment, his moral conduct shall be in all respects exemplary and beyond just reproach.

Now, if a teacher, although he has been employed for a definite length of time, proves to be incompetent, and unable to teach the branches of instruction he has been employed to teach, either from a lack of learning, or from an utter want of capacity to impart his learning to others; or if, in any other respect, he fails to perform the obligations resting upon him as such teacher, whether arising from the express terms of his contract or by necessary implication, he has broken the agreement on his part, and the trustees are clearly authorized to dismiss him from such employment.

On the other hand, where a teacher has been employed for a definite length of time, and has in all respects fulfilled the contract on his part, and discharged all the obligations resting upon him as such teacher, he cannot be legally discharged from the employment, without his consent, until the expiration of the term of his employment.

The answer we have been considering is bad, inasmuch as it does not aver that the appellee was guilty of any breach of the contract on her part. It relies upon the record of the

action of the trustees in dismissing her, and not upon the existence of such facts as authorized the dismissal. Had these trustees been authorized by the statute to dismiss teachers, an appeal lying from their action to the school examiner, the case would have stood upon quite different ground. The teacher in such case would be regarded as having contracted with reference to the law, and the action of the trustees, unappealed from, would seem to be binding upon him. But this case, as we have seen, must stand upon common law ground, and the defence cannot succeed, in the absence of any allegations, as averments of facts, showing that there was sufficient cause for the dismissal. The demurrer to the first paragraph of the answer was correctly sustained.

We come to the second paragraph. We have seen that the process in the cause was served by reading to the Mayor, Marshall, and Clerk of the board of school trustees, and only three days before the return day thereof. It is contended by the appellant, that it should have been served by copy, left with the school trustees ten days before the return day thereof, in accordance with section 144 of the school act. We need not decide this question, as the answer must be held bad, admitting the correctness of the appellant's position in this respect. When the cause was appealed to the circuit court, the first step that seems to have been taken therein, after some continuances perhaps, was the filing of demurrers to the complaint. This amounted to a full appearance to the action. *Kegg* v. *Welden*, 10 Ind. 550; *Knight* v. *Low*, 15 Ind. 374. There was no motion in the circuit court to quash or set aside the summons, or the service thereof, but a full appearance was entered as above stated. Such appearance was a waiver of all defects in the process or the service thereof. 1 Davis Ind. Dig. 38, and 2 Davis Ind. Dig. 17, title Appearance. Conceding that a defect in the service of process is a proper matter for an answer in abatement, a proposition that we do not decide, still it cannot be made available after there has been a full appearance to

the action as in this case. The demurrer to this paragraph was correctly sustained.

Error is assigned upon the rendition of judgment for the plaintiff below, there being a paragraph of answer, the general denial, undisposed of. No objection was made to this, and it does not seem to be relied upon as ground of reversal. As no objection was made in this respect, we presume it was acquiesced in, although the paragraph was not specially withdrawn.

There is no error in the record, and the judgment must be affirmed.

The judgment below is affirmed, with costs.

*J. M. Butler* and *W. F. Brush*, for appellant.

*T. Patterson*, for appellee.